Charles E. Bunting v. Commissioner.
Bunting v. Commissioner
Docket No. 8051.
United States Tax Court
1946 Tax Ct. Memo LEXIS 110; 5 T.C.M. (CCH) 704; T.C.M. (RIA) 46195; August 9, 1946
Walter A. Eversman, Esq., 1600 Ohio Bldg., Toledo, Ohio, for the petitioner. W. W. Kerr, Esq., for the respondent. KERN Memorandum Findings of Fact and Opinion Respondent determined deficiencies in petitioner's income tax for the calendar years and in the amounts as follows: 1937
$26,631.14
1938
5,774.32
1939
37,756.93
1940
52,749.16
1941
47,110.00 The greater *111 part of these deficiencies result from respondent's determination that the income of a certain trust is includible in petitioner's taxable income for the years above set forth under the provisions of sections 22 (a), 166 and 167 of the Internal Revenue Code. Certain other issues were raised by the pleadings but no evidence was presented thereon, and in his brief petitioner states that "the sole issue is the taxability to petitioner of the income from the trust." We therefore assume that the other issues are abandoned by petitioner. Findings of Fact Petitioner is a resident of Toledo, Ohio, and filed his income tax returns for the years 1937, 1938, 1939, 1940 and 1941 with the collector of internal revenue for the tenth district of Ohio. At all times throughout the years 1937 through 1941, petitioner kept his books on the cash receipts and disbursements basis. His income tax returns for the said years were filed on that basis. Petitioner is the son of William Bunting and Fannie Bunting. He had two brothers, John W. Bunting who died in 1938 and was survived by a wife and one child, and William H. Bunting who died in 1943 and was survived by a wife and four *112 children. During the taxable years petitioner was president of the Bunting Brass and Bronze Co., a corporation organized in 1907 by petitioner's father and two other individuals. Several years after its organization petitioner's father acquired complete ownership of the stock of the corporation. He was president of the company from the time of its organization until 1916. Petitioner and his two brothers were employed by the corporation shortly after its organization. As the father grew older the sons took an increasingly substantial part in the management of the business, and at the time of the father's death in 1916 petitioner, although the youngest son, was, in reality, the active head of the company. A few months before the death of petitioner's father he gave 40 shares of the stock of the corporation to his wife, Fannie Bunting, and 70 shares to each of his three sons. At the time of these gifts the total outstanding stock of the company consisted of 1,000 shares, all of which were owned by petitioner's father. By his will petitioner's father bequeathed the remaining shares as follows: 160 shares to each of petitioner's two brothers, and 225 shares each to Fannie Bunting, *113 petitioner's mother, and to petitioner. The will, however, provided that all of the shares would be held in trust by Fannie Bunting and petitioner for a period of fifteen years, unless sooner terminated by the trustees, with the direction that the trustees control and vote the stock "as, in their best judgment, the interests of said company shall demand * * *." Petitioner's two older brothers objected to petitioner thus having control over the stock bequeathed to them, and therefore petitioner and his mother terminated the trust and transferred the shares into the individual names of those designated as beneficiaries in the father's will. Thereafter, petitioner and his mother, who owned the majority of the shares of the corporation's stock, controlled its management. On January 18, 1924, petitioner's mother, for the primary purpose of insuring the management of the company's business by petitioner, created a trust in which the Toledo Trust Company was named as trustee and to which she transferred all of the shares of the corporation which she had previously acquired from her husband. The terms of the trust instruments may be summarized as follows: Article I defined certain administrative *114 powers granted to the trustee, among which was the power to invest the income and profit of the trust property "in such securities as donor's son, Charles E. Bunting, may direct in writing", to enter into any reorganization negotiations "subject, however, to written directions by donor's son, Charles E. Bunting, with respect thereto", to vote the stock held by the trust in person or by proxy, to keep adequate books of account and to give semi-annual statements showing the condition of the property to both the donor and to petitioner, and to make sales of the property. In case of any sale made during petitioner's life, the proceeds were to be reinvested in accordance with his directions. The trustee's rights with regard to the voting of the stock held by the trust were made subject to a provision that the trustees should give to the petitioner so long as he should live authority to vote all of the stock of the corporation, and that petitioner "shall alone be responsible for the operation of said The Bunting Brass and Bronze Company, in so far as such stock is concerned." So long as the donor's son should live, the income of the trust was to be reinvested pursuant to the direction of *115 petitioner. After the donor's death the trust was to continue during the lifetime of petitioner and for a period of five years thereafter, "provided, however, that after the death of donor, said Charles E. Bunting may terminate said trust or lengthen the time for which it will extend by an instrument in writing addressed to Trustee. It is, however, the donor's earnest wish and request that * * * he permit same to continue in existence during his lifetime." After the donor's death the trust income was to be distributed equally to each of donor's three sons. Upon the termination of the trust the trust property was to be distributed: 1/3 to John W. Bunting or his heirs, 1/3 to William H. Bunting or his heirs, and 1/3 to petitioner or to whomever he designated in his will. Article II, in general, outlines the rights and duties of trustee. Article III provided that the donor might increase the amount of trust property. Article IV and Article V read as follows: ARTICLE IV. Section 1. The Trustee shall dispose of the Trust Property, or any portion thereof, from time to time, and in all respects invest and handle same in accordance with provisions of Article I, Section 1, of this *116 agreement and/or any written directions given by Donor's son, Charles E. Bunting; and further, Donor's son, Charles E. Bunting, may withdraw all or any part of said Trust Property by written directions to Trustee. The Trustee shall not be liable for anything done in accordance with instructions of Donor's son, Charles E. Bunting. Should said Charles E. Bunting, withdraw all of the Trust Property, this Trust shall thereafter be considered as terminated unless Donor's son, Charles E. Bunting, otherwise directs in writing to Trustee. ARTICLE V. Section 1. Should any dispute arise concerning the meaning of any clause in this Agreement, then the Trustee, in the exercise of its uncontrolled judgment and discretion, shall interpret said caluse, and, except in the absence of good faith, its decision shall be final. In order to more completely accomplish the purposes of the 1924 trust Fannie B. Bunting and petitioner decided that this trust should be terminated and a new trust executed. Accordingly, pursuant to the authority vested in petitioner by Article IV of the 1924 trust, petitioner, on January 2, 1929, terminated this trust in a letter addressed to the Toledo Trust Co., Trustee. *117 This letter, which was signed by petitioner and his mother, is as follows: Gentlemen: Referring to a certain Indenture of Trust dated January 18, 1924, and made and executed by and between Fannie Bunting and The Toledo Trust Company, as Trustee, which Indenture and the trusts thereby created are known and designated in your files as "Trust No. 50", the undersigned Charles E. Bunting, acting pursuant to the power and authority granted and conferred upon him by the terms of Article IV of said Indenture of Trust, does herewith withdraw all of the property, both principal and income, now held by you as Trustee under said Indenture and of the trusts thereby created. The undersigned Charles E. Bunting does herewith, simultaneously with the withdrawal of said property as aforesaid, convey, transfer, assign and set over all of said property to the undersigned Fannie Bunting, and the undersigned has simultaneously herewith delivered all of said property to the undersigned Fannie Bunting. The undersigned Fannie Bunting, simultaneously herewith and as a part of this transaction, does hereby convey, transfer, assign and set over all of said property so withdrawn and so delivered to her, *118 to The Toledo Trust Company, to be held by said The Toledo Trust Company, as Trustee, upon and subject to the uses and trusts set forth and declared in the Agreement of Trust attached hereto of even date herewith and executed simultaneously herewith, between the undersigned Fannie Bunting and The Toledo Trust Company, as Trustee, and the undersigned Fannie Bunting has simultaneously herewith delivered all of said property to said The Toledo Trust Company to be held upon the uses and trust set forth in said agreement attached hereto. The undersigned Fannie Bunting does further release and discharge you from any and all liability and any and all rights or claims which she has or might have against you as Trustee of said Trust No. 50, except in connection with the execution of the directions herein contained. Yours very truly, Charles E. Bunting (signed) Fannie Bunting (signed) At the same time Fannie Bunting executed another trust instrument creating a trust known as "No. 50" in which The Toledo Trust Company was again named as trustee and to which all of the property held by the 1924 trust was transferred. This trust instrument is incorporated herein by reference. Its pertinent *119 provisions are as follows: * * *
ARTICLE II. Powers of Donor's Son, Charles E. Bunting. Notwithstanding any other provision herein contained the Donor's son, Charles E. Bunting, may at any time or from time to time during his lifetime (either before or after the death of the Donor), without the consent or approval or joinder of the Donor or of any beneficiary hereof or the consent or approval of any court or other authority, by the delivery of a written order of the Trustee, (a) modify, amend or add to this agreement in any respect whatsoever, including the right to change the beneficiaries hereunder, their shares and the plan of distribution to each and to appoint himself as beneficiary hereof, provided, however, that the duties, powers and liabilities of the Trustee shall not be substantially changed without its prior written consent, (b) withdraw any of the trust property from the operation of this agreement whereupon such property shall be paid and delivered over to the Donor's said son, or (c) revoke this agreement in its entirety, whereupon the entire property then held in trust shall be paid and delivered over to the Donor's said son and this trust shall thereupon *120 terminate; and the Donor's said son shall be under no duty or obligation to account to the Donor or the Trustee or any beneficiary hereunder or to any court or other authority for the application of the trust property so received by him upon the exercise of such power of withdrawal or revocation or by appointment as such beneficiary, but the same shall be his absolutely. ARTICLE III. General Powers of Trustee. Except with respect to the powers herein conferred upon the Donor's son, Charles E. Bunting, during his lifetime, the Trustee shall have full power and authority to control and manage the trust estate, to collect, recover and receive the rents, issues, interest and income therefrom and to do all acts and things in its judgment needful or desirable for the proper and advantageous control and management thereof to the same extent and with the same effect as might legally be done by an individual in absolute ownership and control of said property, including (without prejudice to the generality of such powers) the following particular powers: 1. Subject to the control and written directions of the Donor's son, Charles E. Bunting, during his lifetime, the Trustee may in its *121 discretion continue to hold the securities delivered to the Trustee hereunder and those hereafter added to this trust without accountability for loss arising therefrom, and except as herein provided with respect to shares of stock or other securities of The Bunting Brass & Bronze Company or its successor, the Trustee is hereby authorized and empowered, if in its discretion it seems at any time wise or expedient so to do, from time to time, to change, or alter the investments included in this trust, * * *
During the life of the Donor's son, Charles E. Bunting, the Trustee is directed to retain, subject to the provisions hereof, all shares of stock of The Bunting Brass & Bronze Company delivered hereunder or hereafter acquired by the Trustee, in their present form or the shares of stock for which such shares shall be exchanged and reexchanged at the direction of the Donor's son, Charles E. Bunting, as the result of any reorganization, consolidation or merger. During the life of the Donor's son, Charles E. Bunting, said shares of stock shall not be sold or so exchanged or reexchanged by the Trustee except on written instructions from the Donor's son, Charles E. Bunting. 2. The *122 Trustee shall not be required to register any of the securities comprising the trust estate in its name individually or as Trustee, but may register and retain the same in the name of its nominees, or may take and keep them unregistered and may retain them or any part thereof, in such condition that they will pass by delivery. Subject to the written control and written direction of the Donor's son, Charles E. Bunting, during his lifetime, and except as hereinbefore provided with respect to shares of stock or other securities of The Bunting Brass and Bronze Company, or its successor, the Trustee is authorized and empowered to vote in person or by proxy upon all stocks or other securities held by it; * * *
8. The Trustee may conclusively determine any question which shall arise concerning the construction or interpretation or administration of this instrument or anything relating thereto, or any matter or question of fact or law in doubt; acting either on its own judgment or the advice of counsel, but it may in its discretion, petition a court for advice and instructions. 9. The Trustee shall keep adequate books of account in which shall be entered a description of all property *123 from time to time constituting the trust property, and on account of all receipts and disbursements hereunder, which books of account shall at all times be open to inspection and examination of the Donor during her lifetime and of the Donor's son, Charles E. Bunting, during his lifetime and thereafter by the proper representatives of The Bunting Brass & Bronze Company, or its successors. The Trustee shall furnish the Donor during her lifetime and the Donor's son, Charles E. Bunting, during his lifetime, and thereafter The Bunting Brass & Bronze Company, or its successor, at least annually and as often as may be reasonably requested during the life of this trust, an accurate statement showing the property constituting the trust property and the income therefrom. * * *
ARTICLE IV. Beneficiaries. 1. In the absence of any direction to the contrary by the Donor's son, Charles E. Bunting, during his lifetime, and subject in all respects to the exercise of all other powers in this Agreement conferred upon the Donor's said son, the Donor directs that during the joint lives of herself and her son, Charles E. Bunting, the net income of the trust estate shall be accumulated and shall *124 be added to and become a part of the principal of the trust estate. 2. After the death of the Donor, and during the life of the Donor's son, Charles E. Bunting, the net income shall be disposed of in accordance with the written directions of the Donor's son, Charles E. Bunting, at any time or from time to time given, subject in all respects to the exercise of all other powers in this Agreement conferred upon the Donor's said son. 3. After the death of the Donor's son, Charles E. Bunting, the entire property then held in trust, both income and principal, shall be held upon and subject to the trusts set forth in Article V. hereof. * * *
ARTICLE VII. Resignation and Removal of Trustee. The Trustee may resign upon thirty (30) days' written notice thereof to the Donor's son, Charles E. Bunting, or, after the death of Donor's son, Charles E. Bunting, to the Board of Directors of The Bunting Brass & Bronze Company. The Trustee may be removed at any time by written notice from the Donor's son, Charles E. Bunting, during his lifetime. After the death of the Donor's son, Charles E. Bunting, the Trustee may be removed only by order of a court of competent jurisdiction for good *125 cause shown. In the event of the resignation, removal or incapacity or refusal to act of the Trustee, or its successor in trust, a successor may be appointed, (a) During the life of the Donor's son, Charles E. Bunting, by an instrument in writing executed by the Donor's son, Charles E. Bunting, naming such successor trustee; or (b) After the death of the Donor's son, Charles E. Bunting, by the designation in his last will and testament of such successor trustee; or (c) If no person shall be designated in the last will and testament of the Donor's son, Charles E. Bunting, then a successor trustee shall be appointed by the Board of Directors of The Bunting Brass & Bronze Company acting by majority vote. (d) If the Donor's son, Charles E. Bunting, or the Board of Directors of The Bunting Brass & Bronze Company shall not within thirty (30) days appoint a successor, then the Trustee desiring to resign or any beneficiary may jointly or separately apply to any court of competent jurisdiction for the appointment of such successor trustee. * * *
Article V., which we have not set out above, may be summarized as follows: Donor declared the primary purpose of the trust was to *126 provide for the continuity and successful promotion and management of the Company after the death of petitioner, and that, after the death of petitioner, the trust property should continue to be held in trust for such period of time, not exceeding fifteen years, as Trustee, in its uncontrolled discretion, should deem to be for the best interests of the Company. Trustee was directed to take such reasonable measures as would insure to itself the preservation of voting control of the Company after the death of petitioner, and was empowered to invest the trust funds in the purchase of any securities of the company, whether then issued and outstanding, or subsequently issued, and, in order to provide funds for that purpose, was empowered to borrow money, and to pledge the property of the trust estate as security for the repayment thereof, and Trustee was further authorized to take any other measures which, in its opinion, would vest Trustee and the members of Donor's family with voting control. Trustee was empowered at any time during said fifteen year period, to sell, contract to sell, or to donate shares of the company belonging to said trust, to such persons as Trustee, in its uncontrolled *127 discretion, should consider desirable to secure or to retain in the employment of the company, all on such terms and conditions as Trustee, in its sole discretion, should determine. Trustee was empowered, in its absolute discretion during said fifteen year period, to retain and accumulate such part of the net income of the trust estate for a surplus or reserve fund as Trustee should deem necessary for the financial support of the company, and to distribute such part of the net income not so set aside for a surplus or reserve fund, as Trustee, in its discretion, should determine among the then common shareholders of the company (other than Trustee under Trust No. 50, or the trustee of any trust created by petitioner) pro rata in the proportion as the number of shares each such shareholder then held in the company bore to the total number of shares then held by all said shareholders. Trustee was directed, upon the termination of the trust, either at the expiration of the fifteen year period, or at such earlier period as Trustee might determine, to distribute the trust property then in its possession to the then shareholder beneficiaries. At the time of the creation of Trust No. *128 50 on January 2, 1929, the corpus of the trust estate consisted of 2,385 shares of the common stock of the Bunting Brass & Bronze Company, approximately $70,000 worth of miscellaneous securities, some few shares of preferred stock in two other Ohio corporations, and approximately $4,820 in cash. The principal trust asset consisted of the Bunting Brass & Bronze Company stock. The difference between the number of shares of this stock acquired by donor from her husband and the number of shares transferred to the trust represents additions resulting from share dividends. Acting pursuant to powers vested in him by Article II of the trust instrument of January 2, 1929, the petitioner, Charles E. Bunting, on July 12, 1940, amended the trust instrument by striking Article V from the trust instrument and substituting another Article V which provided for the distribution of trust property after petitioner's death, the provisions of which amendment changed the interest of the beneficiaries from those provided by the original instrument. Again, pursuant to the same powers vested in the petitioner by Article II of the trust instrument, the petitioner, on July 2, 1941, amended and changed Article *129 V of the trust instrument with respect to "Distribution of trust property after death of Donor's Son, Charles E. Bunting," again changing the interest of the beneficiaries and providing for distribution of trust property to designated persons after his death. Fannie Bunting, donor of Trust No. 50, died March 26, 1938. At no time from January 18, 1924, to date has any distribution of income or principal been made to the petitioner from either the 1924 trust or Trust No. 50. No distribution of any kind has been made to any person from either of the trusts. During the years 1937 through 1941, the Toledo Trust Co., as trustee of Trust No. 50, filed fiduciary income tax returns and paid the following amounts of tax upon the income of the trust: 1937
$ 9,452.01
1938
3,078.68
1939
14,984.26
1940
29,902.33
1941
31,887.33
Opinion KERN, Judge: Respondent contends that the income from Trust No. 50, created on January 2, 1929 and described in our findings, is taxable to the petitioner under the broad provisions of section 22 (a) of the Internal Revenue Code. We agree with this contention under the authority of Malinckrodt v. Nunan, 146 Fed. (2d) 1; *130 Jergens v. Commissioner 136 Fed. (2d) 497; Richardson v. Commissioner, 121 Fed. (2d) 1; and Emery v. Commissioner, 156 Fed. (2d) 728 (CCA-1, July 22, 1946). Petitioner's principal contention is that the purpose of the grantor (petitioner's mother) in creating the trusts referred to in our findings was to preserve the successful operation and management of the family corporation rather than to confer any economic benefits upon the petitioner. It is our opinion that the powers granted to petitioner by the trust instrument creating Trust No. 50, dated January 2, 1929, constitute the equivalent of ownership of the trust income for purposes of taxation. This conclusion results from the existence of these powers. The intent or purpose of the creator of these powers in the petitioner, is immaterial. Respondent also contends that on the facts here presented the conclusion is inescapable that petitioner was, in substance and reality, the grantor of the 1929 trust and that he is therefore taxable on the income thereof pursuant to the provisions of sections 166 and 167 of the Internal Revenue Code. While we are inclined to agree *131 with respondent on this contention, we do not decide this question since our conclusion that the income of the trust is taxable to petitioner under section 22 (a) makes it unnecessary. Decision will be entered under Rule 50.